John A. PHILLIPS, Herbert Craig, Jr., E. E. Taylor, Herbert Craig and A. Felleman Fish

v.

REYNOLDS & CO.,

and

Lawrence S. Warren.

Civ. A. No. 35663.

United States District Court
E. D. Pennsylvania.

March 14, 1969.

David Kanner, Kanner, Stein & Feinberg, Philadelphia, Pa., for plaintiffs.

Eliot H. Lumbard, Townsend & Lewis, New York City, and Daniel I. Murphy, Takiff, Bolger & Murphy, Philadelphia, Pa., for Reynolds & Co.

George P. Williams, III, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for Lawrence S. Warren.

OPINION AND ORDER

WOOD, District Judge.

This is a motion to amend and supplement our Findings of Fact and Conclu-

sions of Law [1] or, in the alternative to grant a new trial. The action was initially commenced by five plaintiffs seeking to recover damages for common law fraud and for violations of Section 17 of the Securities Act of 1933, and Section 10 of the Securities Exchange Act of 1934 in the sale and purchase of securities. The defendants are Reynolds and Company, a partnership of stockbrokers, and Lawrence S. Warren, an individual agent of Reynolds. Plaintiffs' complaint centered on allegations that Warren had sold them stock of Strategic Materials Corporation, a fledgling company which was reported to have developed a new process to produce steel from low-grade ores, without apprising them of the fact that Strategic was running a deficit of approximately $9 million, or that Warren affirmatively represented to them that Strategic was currently operating profitably. The claims of two of the plaintiffs were dismissed by stipulation of counsel, and we found in favor of the remaining defendants on all counts. Only one of

the original plaintiffs, A. Felleman Fish, has resisted our decision, and he makes the motions presently before the Court. We have re-examined the record in the light of plaintiffs' motions and the argument before us, and have concluded that there is no cause to alter or amend our original disposition of the case. The thrust of the contentions advanced by the plaintiff were previously presented to us, considered, and discussed in our original opinion.

The only major contention advanced by the plaintiff, Fish, at argument was that under Rule 10b–5 or under the common law of fraud, Warren had an affirmative obligation to inform him before purchasing that Strategic was running a deficit of approximately $9 million.[2] Plaintiff argued that Warren should have known that Fish, who was sixty-one years old and currently holding Pennsylvania Turnpike Bonds at the time he purchased Strategic stock, would not be interested in speculative stocks, and the fact that Strategic was running a nine million

1. 294 F.Supp. 1249 (1969). There were three minor verbal errors in our opinion as filed, all of which have been corrected in the reported edition of the case. The first sentence of the opinion as filed reads " * * * Exchange Act of 1934 in the sale of securities", and should read in the "purchase and sale". In Finding of Fact No. 2 it is stated that Reynolds is a "partnership of stockbrokers". This should read "shareholders". On page 13 of our opinion as filed on line 11 we referred to Craig, when obviously in context we intended to refer to Fish.

2. There is a preliminary difficulty in analyzing this contention. Plaintiff asserted to us during trial that Warren acted as a principal rather than an agent or broker on some of the transactions complained of without so informing the plaintiffs. Mr. Warren did testify that Reynolds during this period did maintain an inventory of certain over-the-counter stocks so as to have an adequate supply of stock for trading for the convenience of their customers. However, we concluded in our opinion that "the testimony of Warren was that in those cases where he acted as principal, he told plaintiffs that he acted as such. We have not found, nor has the plaintiff cited to us, any testimony to

the contrary. Nor is there any evidence showing on which stock Warren acted as principal and on which he acted as a broker-agent."

In determining whether a sales representative had an affirmative duty to inform a purchaser of such a deficit, it might well be relevant whether the sales representative was acting as a broker-agent or a principal in the particular transaction complained of. For instance, there might be reason in some transactions to impose a greater duty of disclosure in a transaction where the sales representative acted as a principal because he or his firm may have their own interest in marketing the security. On the other hand, just because a broker-agent knows of inside information concerning a stock should not preclude him from merely executing an order for that stock.

In the instant case, we cannot determine whether as regards the stock Fish purchased from or through the defendants, Warren acted as an agent or a principal. However, under the circumstances before us, we do not think for the reasons stated here and in our original opinion, that liability should be imposed on the defendants whether they acted as agent or as principal.

for the previous seven years engaged in dollar deficit made it a very speculative stock. However, as we concluded in our original opinion, we do not think that the securities laws were intended to impose liability in the circumstances of this case. Fish was a reasonably intelligent businessman, a graduate of business school and an insurance broker. Although he stated that he was at that time looking toward retirement and therefore not interested in a speculative stock, he had numerous speculative transactions. He had engaged in these transactions upon the advice of Warren and reaped handsome profits. From time to time, on Warren's advice, he shifted his holdings into bonds until market conditions appeared more propitious. Fish decided to purchase Strategic on the basis of a telephone conversation with Warren. During that conversation, as is related in our Finding of Fact # 15, Warren described Strategic's operations and prospects in general terms. Fish himself admitted that Warren told him that Strategic's prospects rested on successful development of an experimental process, that it was a new company which did not pay a dividend, and that it was possible that Strategic might go from thirty to fifty within six months. Knowing these and other facts Fish must have been aware that Strategic was a speculative purchase. nor do we think it would have been surprising for Fish to find out that such an inchoate venture was operating at a deficit. In any event, Fish admitted that he was relying on Warren's judgment and opinion. Warren did in fact accurately represent his opinion of Strategic; he bought about 9,000 shares of Strategic for himself at a cost of $229,000, and subsequently sold these shares at a loss of $173,598. Fish never requested any financial information concerning Strategic, and made his own decision to risk nearly $60,000 after talking with Warren on the telephone.

Such transactions occur daily. Warren was not an "insider" at the time of the transactions complained of; nor was he in possession of any information not generally available to investors who desired it. Fish was an experienced businessman who had made significant profits on Warren's advice in the past and who chose to risk significant amounts after hearing a brief discussion on the telephone. Fish admitted that Warren described Strategic and its prospects generally, and he does not question the accuracy of anything Warren told him concerning Strategic. Moreover, we think that this information was sufficient to apprise Fish of the general speculative nature of the investment which he perhaps overhastily undertook. Section 17(a) of the Securities Act of 1933 and Rule 10b–5 under the Securities Exchange Act of 1934 require in connection with such purcases that the seller not "omit to state a material fact necessary in order to make the statements made, *in the light of the circumstances under which they were made*, not misleading" or not "to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit * * *" (emphasis added). As we concluded in our original opinion, "To make a broker liable under these circumstances would make him a virtual insurer of his investment recommendations unless he provided customers with every conceivable material fact concerning a stock before customers purchased." It might well be a salutory reform to require that investors be provided with some sort of prospectus before purchasing, but we cannot find any precedent for such a requirement at the present time.

We also find the plaintiff's other objections, which were stated in his moving papers but never briefed or argued to us, as lacking in merit, as is amply demonstrated by the briefs of the defendants on these questions.

## ORDER

And now, this 14th day of March, 1969, it is ordered that the motions for a new trial and to amend and supplement our Findings of Fact and Conclusions of Law filed January 14, 1969, are denied.